Third case this morning is U.S. v. Rollins. Good morning. May it please the Court. Good morning. So continuing on our Johnson theme, I'm going to argue with the premise that Johnson does apply to the career offender guideline. That's obviously going to be argued in the next case because the little wrinkle in this case is if it does apply to that and invalidates the residual clause of section 4B1.2, can an application note standing alone provide authority to classify an offense as a crime of violence that would not be designated as such by any valid provision of the career offender guideline? And the answer to that is no. There is a distinction, and it may be silly, and I think that's what the Roth decision is essentially saying, is when it says if the sentencing commission had added application note 1 as a paragraph to section 4B1.2, it's in the text, then the argument is sunk. But it's a distinction that the Supreme Court has made between guideline text and application note text, and it's a reasonable distinction because those texts go through different processes to get promulgated. So the Roth case is about our deference, and we've noted that that's maybe on thin ice. But an application note alone has to interpret something. It doesn't have freestanding authority to designate as a crime of violence an offense that would not be a crime of violence by the text of the guideline. And I think that there's perhaps a plausible argument the government could make is to say, well, Johnson says this residual clause is vague, but the application note pretty clearly says a sawed-off shotgun is a crime of violence. So how is that vague? And what I noticed that the court in Johnson said, even when there are clear applications, even when it's clear that something qualifies under the residual clause, that doesn't save the residual clause. Right. It was a facial decision, a facial invalidation. Exactly. And so nothing can come in under that residual clause, even if the application note is perfectly clear that that's how it's trying to get it in. So, again, Roth was based on the residual clause. It doesn't explicitly say that, but it basically says, this is like James where we've got the Supreme Court interpreting the residual clause and saying it doesn't say anything about these inchoate offenses. We think it applies or it doesn't apply. So Roth was. . . It has to be based on the residual clause. It has to be. It's tethered to nothing else in the guideline itself. Exactly. Exactly. And so, obviously, we filed some supplemental authority. The Fourth Circuit has certainly agreed that an application note cannot, on its own authority, designate something as a crime of violence under this section. Since we were here a couple of years ago, this Court's decided the McMillan case, which I think states the rule pretty explicitly, that an application note, if it's wrong, if it doesn't correspond to what the text says, we disregard the application note. That's the rule of Stinson. That's the rule that this Court has followed. So I think that's sort of the main argument here. I did want to make a note about supervised release. That also has changed since we last saw each other. There was a conceded error here in the length of the term of supervised release, along with the conditions, although, of course, we failed to raise those in our initial briefing. But what I would suggest, given all of the uncertainty and the errors that the District Court made in imposing the term of supervised release, that whatever this Court decides as to the career offender question, that it should send this case back for a full remand to address the concerns in Thompson and Kappus in addressing the term of supervised release. Do you know the status of the Sentencing Commission's repeal of the residual clause career offender guideline? My understanding of it is that they may seek to promulgate that as an amendment sort of out of the normal course of going into effect on November 1st of every year. My impression is that they may try to get that promulgated by something like August of next year. But I can't say that with certainty. I know the process is going on, but as we noted— And retroactively? Oh, no, I don't think it would be applied retroactively. I'd be surprised. I haven't seen anything that would make it retroactive. But somebody who is sentenced, you use the guideline manual that's applicable at the time of their sentencing. Right. But all these pipeline cases and then we've got collateral review to be concerned about. I don't think it would apply in collateral review, which is why deciding the question here is important as to whether this application note has freestanding authority. Right. For Mr. Rollins, I think the practical solution is let's send it back due to the supervised release errors, wait for the guidelines to change, and we're done. But ROP has to be overruled? No, I don't think so. Because I don't think ROP says a guideline application note standing alone can overrule the guideline text. It has to interpret text. And at the time ROP was around, the residual clause was perfectly valid. Well, no, if it's vague, it's vague ab initio. What's that? Fancy term. Yeah, right, right, right. So, right. And if the guidelines are not unconstitutionally vague, then, again, we've made that argument and we've heard the court's input on that. But we would repeat again that this contradicts the guideline. Either there's no text or there's a text that this court has interpreted to say means something other than what the Sentencing Commission says. Unless there are further questions. Thank you. Thank you, counsel. Mr. Proctor. May it please the Court. I'll jump in to just briefly comment on the Sentencing Commission and where they are at. My understanding is that they held hearings in early November. There have been significant comments made by practitioners. The executive branch has submitted significant comments and significant proposed changes to what has been proposed at this point. I understand the commission will be meeting again in December and possibly promulgating in January and sending that to Congress for a six-month period for being finalized at some point in the late summer. This case is, I'm starting from the premise as well as appellant, that Johnson applies to the residual clause of 4B1.2 sub A sub 2. That will be the subject of the next hearing. So I'm going to, unless there's further questions on that, I'm going to jump right in to why this isn't a residual clause case. This case determines or rests on the validity of the Sentencing Commission's authority. We know that the Sentencing Commission, in adding possession of a legal firearm, including sawed-off shotgun, to the definition of crime of violence, it was interpreting the phrase crime of violence. The commission said it is. It specifically said that illegal possession of a firearm is defined under Section 5845, including sawed-off shotgun, is a crime of violence. It didn't get into it poses a serious risk to others. It just said this is a crime of violence. Well, it has to be tethered to some aspect of the definition of crime of violence, right? It does not need to be tethered to the residual clause. It can be tethered to the phrase. Well, it has to be either sub 1 or sub 2, right? It has to be either the elements-based crime of violence or the residual clause-based crime of violence. There's no third category. The third category, I argue, Your Honor, is the phrase crime of violence itself. That's not a third category. Well, the way I get it, the crime of violence is a term of art in the guidelines, and it has two definitional aspects. One is the elements-based aspect, and the other is the residual clause aspect, and the application notes have to be tethered to one or the other. They can't just be free-floating out there. Okay. Here, obviously, we are agreeing that the residual clause is gone. Obviously, possession of a sawed-off shotgun does not fall into sub A, sub 1. Right, so it's out. So the government's position, my position, is that you can tie it to the phrase crime of violence. 4B1.1 is a career offender. That doesn't exist independently of the definitions, right? I mean, it's not just an inchoate term there, undefined. It has two definitions, the elements-based one and the residual clause-based definition. And if the residual clause is gone as the government concedes, there's nothing left for the sentencing commission to be interpreting by way of the application note that you're relying on. I understand Your Honor's point. The government's position is that it's tied to the phrase crime of violence because that statement, crime of violence, comes from the statute where Congress, in creating the commission, creating the guidelines, asked them to raise guideline levels for certain repeat recidivist offenders who have been convicted of prior crimes of violence and left crime of violence to be determined by the commission. The commission then added a definition in the guidelines, but it also has, in the commentary, added several different crimes that in its expertise and in its purpose of... Right, but it can't do that independently by way of an application note. It has to go through the notice and comment rulemaking of the guidelines procedure first, and the application notes are just interpretations. They are interpretations, Your Honor. And an interpretation can't exist in the absence of text in the guidelines that it's interpreting. And the crime of violence term is not an open universe. It's a closed universe with these two sub-definitions. For that, I would point to Stinson himself, where Stinson kept, when it was determining whether or not the commentary excluding felon in possession of a firearm was a valid interpretation, it kept referring it's a valid interpretation of the phrase crime of violence. The Stinson court did not get into whether or not it fit into subpart A1 or subpart A2. Well, it didn't have to, and we have to here because we have one part of the definition that's invalid. In fact, the only part that could possibly cover this crime. To get there, Your Honor, I believe that it is important what Stinson did or did not do. It could have gotten into how the felon in possession removal from crime of violence did work into one of the subcategories it did not. And the same case with Raup. The dissent in Raup went after the majority for playing what it called a trump card that the commission has specifically set forth that conspiracy offenses are crimes of violence. The dissent said you can't fit conspiracy to commit robbery into either sub A1 or sub A2. But Raup said that wasn't necessary. It went forward and interpreted the phrase crime of violence. And also note that while it is true and it is a point for the court to consider that commentary such as this one adding possession of a sawed-off shotgun can be promulgated by the commission at any point. Most commentary, most substantive commentary goes through the comment and notice period and is submitted to Congress. That is in the commission's own rules. And that occurred for this particular addition to the crime of violence definition. It went through in 2003 the full notice and comment period. It was submitted to Congress and it was added to the definition of crime of violence. Counsel, once you explain in short language if you can, setting aside the supervised release issue which we know about, on what basis after Johnson do you think we should affirm Rollins' sentence? Rollins' sentence can be affirmed because the comment relied on by the district court in designating him a career offender is still valid post-Johnson. Are you saying Tishner is still valid? I'm not saying Tishner is still valid. Are you saying Raup is still valid? Yes, I'm saying Raup is still valid. But then getting what Judge Sykes, what's the hook for the sawed-off shotgun to refer back to in the career offender residual clause, or in the act, or in the guideline? I'm not saying that... What's the hook? The hook is the phrase crime of violence itself. In Stinson, the court specifically said that the text of the guideline did not compel the commentary that was promulgated, but the only way to decide that a comment is invalid is if it is plainly erroneous or inconsistent with the guideline text. Nothing in the text specifically says you cannot include a sawed-off shotgun. Stinson gave one example of what would be inconsistency. It's if compliance with the commentary causes a violation of a guideline. That is the only scenario set forth in Stinson when one can discredit a comment that is otherwise binding on the courts. And here, nothing in the phrase crime of violence or in 4B1.2 specifically excludes the commentary set forth by the commission who is charged with revising the guidelines based on input from various authorities and advice from Congress when it considers sawed-off shotguns that possession of those weapons are purely used for violent purposes. We're just not in Stinson territory anymore after Johnson. We need a textual basis in the guideline itself to support this application note. So we're not comparing the application note if we're not comparing the application note against anything in the text of the guidelines itself. We're just not in Stinson territory. That's what Stinson is about, comparing the application note to the text of the guideline. And if there's fatal inconsistency, the application note goes. If there's no fatal inconsistency, the application note gets our deference. We're just not in that land here. We don't have anything in the text of the guidelines to tether this to. I see my time is up. You've got plenty of time to answer Judge Sykes' question. My response, Your Honor, and I will go back to what I previously said, is that it is a valid interpretation of the phrase crime of violence, and the commission is allowed to define that phrase. That might be true if crime of violence were an undefined term in the text of the guidelines. It's not. It's a defined term and the only part of the definition that might plausibly apply here is gone by the government's own concession. If that was the only place that the argument goes that it can fit in there, I agree that that part is gone, but I stand on the position that the phrase crime of violence can be interpreted independently. Jesuitical also applies to this argument as well. I'm sorry, Your Honor? The term Jesuitical applies to the government's argument in this case as well. Had you heard anything about a revision of the determination of what a short-barreled shotgun is? I'm sorry? In other words, I'm not sure what agency makes those determinations, but determining how long a shotgun must be to be legal. Yes, Your Honor. That is in the brief. I'm trying to remember. I think it's a barrel length of less than 16 inches. I have to check the statute again. Okay. Well, that's just an aside. Thank you. Thank you. How much time? Three minutes. I was thinking about your question, Judge Sykes, about Rob. I think you're right. Actually, it would have to be overruled in part because conspiracy to commit offense is no longer a crime of violence. So I misunderstood your question before. Right, we've got those cases in the pipeline. Right, right. The government's main argument, I think, is that this application note interprets the term crime of violence in 4B1.1, but this is an application note to 4B1.2, which specifically in the guideline text defines what a crime of violence is. So I think that that's slightly misplaced. And the government mentioned that Congress directs the Sentencing Commission to say what a crime of violence is. They did exactly that in the guideline text according to the mandate in Section 994P. But there's no mandate to create commentary. That's the difference, is that Congress didn't direct the Sentencing Commission to create this commentary. They directed them to promulgate the guideline. Mr. Proctor says that this application note underwent notice and comment and submission to Congress in the same fashion that the guidelines themselves do. Does that make any difference? I don't think so because, again, it's the rule of Stinson. We treat these two things differently. Part of it, I suppose, about notice and the concerns in Johnson about the arbitrariness and unpredictability of the residual clause, if somebody is looking at the guidelines, they should be able to discern from the guideline text what it means unless something is defined in the application notes. But here it's clearly defined in the guideline text. Thank you, Your Honors. Thank you, Counsel.